# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDGAR LEE ADDISON and<br>JOSEPHINE TORRES ADDISON,<br><br>Plaintiffs,<br>v.<br><br>CBS CORPORATION, A DELAWARE CORP. f/k/a<br>VIACOM INC., successor by merger to CBS CORP., A<br>PENNSYLVANIA CORP. f/k/a WESTINGHOUSE<br>ELECTRIC CORP., et al., *including*:<br>NORTHROP GRUMMAN CORPORATION,<br><br>Defendants. | )<br>)<br>)   No. 3:12-cv-00397-WDS-PMF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF JOHN F. DEBOIS

I, John F. DeBois, having been duly sworn do state under oath:

1. I am currently the Director of Contracts for Northrop Grumman Technical Services Sector of Northrop Grumman Corporation ("Northrop"). I began my employment with Grumman Aerospace Corporation ("Grumman") over thirty years ago, and I joined Northrop when the companies merged.

2. My position with Grumman required me to oversee Grumman's government contracts to provide military aircraft and required parts. My current position with Northrop similarly requires me to oversee the Northrop Grumman Technical Services Sector's contracts for military systems and services.

3. As such, I have personal knowledge of the historical procedures relating to contracts with the United States government as well as the terms typically included in such contracts and access to the related records of Northrop and its subsidiaries (collectively referred to as "Northrop").

4. During my various roles with Northrop, I became personally familiar with the level of supervision and control exercised by the U.S. Air Force over designing and manufacturing Air Force aircraft. During the regular course of performing my job responsibilities, I also became familiar with the general procedures in place for the manufacture of Air Force aircraft dating back to the 1940s. Based upon my experience, I understand that the procedures described below and the level of supervision and control exercised by the U.S. Air Force over designing and manufacturing Air Force aircraft have remained largely unchanged throughout these years and continuing to the present.

5. I understand that Plaintiffs allege that Edgar Lee Addison was exposed to certain asbestos-containing products while performing maintenance on military aircraft during

1

his service in the U.S. Air Force from 1973 until 1993.

6. A primary business of Northrop as a contractor for the United States military has been the construction of military equipment, including aircraft. Historically, and during the time period at issue in this matter, Northrop companies contracted with, and manufactured and supplied completed aircraft to, the U.S. Defense Department's military services, including the Department of the Air Force.

7. I have reviewed numerous Northrop government contracts from the time period of 1948 through the present. I am generally familiar with Northrop's government contracts during that time period and the terms therein. Contracts between the military and Northrop would require Northrop to comply with the contract terms, plans, and specifications that were subject to the U.S. government's approval.

8. Contract documents for Air Force aircraft contain detailed specifications and drawings defined exclusively by the Air Force. These contracts define the Air Force's requirements for aircraft equipment and materials in detailed technical specifications that include state of the art specifications that can only be changed by the Air Force pursuant to formal procedures.

9. If design disagreements arose between the Air Force and Northrop regarding these aircraft, the Air Force controlled the design adopted. All final drawings and specifications required express U.S. Air Force approval and adoption.

10. Military aircraft that Northrop companies produced for the military services of the Defense Department were used by the military services for military purposes.

11. Historically, and during the time period at issue in this matter, military aircraft programs have generally followed a standardized procedure. Typically, military aircraft programs are performed with a team of subcontractors and parts suppliers, with one company serving as the responsible prime contractor with the Government with very few exceptions.

12. Prime contracts that Northrop had with the U.S. Government included detailed plans and specifications for these military aircraft and parts. Like the general specifications that applied to these prime contracts, the Government prepared the detailed plans and specifications. While Northrop may have participated in aircraft design or selection of parts or materials, the government ultimately reviewed and approved the design work. The government had final approval over Northrop's proposed plans and specifications. Once these specifications were finalized, Northrop was required by the government to comply with these specifications.

13. The government typically provided Northrop with the engines to be used under these contracts, including, if applicable, piston engines. The government also typically provided Northrop with brake and wheel systems for the aircraft it produced under these contracts. These component parts were manufactured for the U.S. Air Force by other contractors, often under separate contracts. Northrop was required to use these component parts supplied by these other contractors or directly by the U.S. Air Force in

the production of these aircraft.

14. As each aircraft produced under the program was completed, the government would perform an examination and flight test. If the aircraft satisfied the specifications, it was accepted by the government.

15. Based on my knowledge of the industry, the U.S. government would specify that asbestos-containing materials be used in military aircraft and their component and replacement parts pursuant to military specifications.

16. Warnings used in conjunction with products made for the U.S. military would be provided by the military. Northrop was not permitted to add any warnings for the military aircraft herein described that were not provided by the United States.

17. The foregoing is based on my more than thirty years of experience with Northrop, managing various aspects of government contracts for military aircraft as well as other products.

**FURTHER AFFIANT SAYETH NOT.**

Under penalties as provided by law, the undersigned certifies that the statements set forth in this affidavit are true and correct.

Executed this 1th day of May, 2013.

John F. DeBois

3